ORIGINAL

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

'08 CV 0399 H PCL

JOSEPH CLARK,

            Petitioner,

     v.

ROBERT HERNANDEZ, Warden,

            Respondent.

Case No. _____



FILED

MAR - 3 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

---

# *PETITION FOR WRIT OF HABEAS CORPUS;*
# *MEMORANDUM OF POINTS & AUTHORITIES;*

---

LINDA BUCHALTER
State Bar No. 139331
1011 5th Street, # 6
Santa Monica, CA 90403
Telephone (310) 393-7033

Counsel for Petitioner
JOSEPH CLARK

# **TABLE OF CONTENTS**

PageNo.

Preliminary Requirements                                          2

    The Petition is Timely.                          2

    Petitioner is in Custody.                       2

    Exhaustion of State Administrative Remedies     2

    Exhaustion of State Court Remedies              2

Statement of Case and Facts                                      2

    The Commitment Offense                          2

    Petitioner's Prior Criminal Record              3

    Petitioner's Sentence and Commitment            3

    Petitioner's Post-Conviction Record             4

Forensic Evaluation of Petitioner's Parole Risk                  4

The Prescribed Minimum and Maximum Prison Terms                  5

Parole Proceedings 1995-2005                                     5

2005 Parole Hearing                                              6

State Court Rulings on Petitioner's Claims                       7

Requirements of Due Process; Standard of Review                  8

Petitioner's Constitutional Claims:                             10

I.    **The Denial of Mr. Clark's Parole Based on Arguably Applicable
Factors of a 20-year Old Second-Degree Murder Offense and
Failure to Participate In a Non-existent Substance Abuse Program
Violated his Right to Due Process, Because he has Been Determined
Forensically to Pose a Below Average Parole Risk, far Below the
Codified "Unreasonable Risk" Standard, Because the Facts Recited
No Longer Bear Any Nexus to his Current Parole Risk, and, Since
Neither Those Immutable Facts nor the Forensically Determined
Below Average Parole Risk he has Indisputably Achieved can ever
Improve, the Process has Converted his Prison Term to Life
Without the Possibility of Parole and Extinguished his Protected
Liberty Interest in Parole**    10**

CLARK v. HERNANDEZ; Petition for Writ of Habeas Corpus

# TABLE OF CONTENTS
(Continued)

A.   No Evidence Supports the Notion that Mr. Clark
     Posed an "Unreasonable Public Risk of Danger
     To Society or a Threat to Public Safety"                    10

B.   The Panel's Findings Also Flunk the *Some Evidence* Test    11

C.   The Panel's Decision Based on Arguably Applicable,
     Immutable Commitment Offense Factors Flunks the
     Some Evidence Test and Violated Due Process Because
     the Panel Suggested no Bearing Such Facts Have Upon
     the State's Sole Parole Suitability Determinant –
     Whether Mr. Clark's Parole Currently Posed an
     "Unreasonable Risk of Danger" to Public Safety              17

D.   Interminable Denial of Mr. Clark's Parole Based on
     Arguably Applicable but Immutable Factors of
     His Commitment Offense Violates Due Process
     By Amending His Prison Term to Life Without Any
     Possibility of Parole.                                      25

II.  **Deferring Mr. Clark's Subsequent Parole Hearing for a
     Three-Year Period Violated Due Process Because it was
     Arbitrary in the Extreme and Supported by no Evidence of
     his Inability to be Parole Suitable After the Usual One-year
     Interval**                                                  30

Conclusion                                                       33

Verification                                                     35

# **TABLE OF EXHIBITS**

Exhibit A    Abstract of Judgment

Exhibit B    Probation Department report for sentencing

Exhibit C    BPH parole hearing transcript (August 10, 2005)

Exhibit D    Petitioner's psychological evaluation

Exhibit E    Superior court order denying habeas corpus petition

Exhibit F    Court of Appeal Order denying habeas relief

Exhibit G    California Supreme Court Order denying petition for review

Exhibit H    Order of the Superior Court Santa Clara County, August 30, 2007, *In re Arthur Criscione*

1
2

# **TABLE OF AUTHORITIES**

3

## **Cases**

4
*Biggs v. Terhune,* 334 F.3d 910 (9th Cir. 2003) .................................................. 8, 25, 26, 29

5
*Blankenship v. Kane,* 2007 WL 1113798 (N.D. Cal 2007) ........................................ 19

6
*Brown v. Kane,* 2007 WL 1288448 (N.D. Cal 2007) ................................................. 18

7
*Fowler v. Butler,* 2007 WL 1555726 (E.D.Cal. 2007) ............................................. 18

8
*Hayward v. Marshall,* 512 F.3d 536 (9th Cir. 2008) ............................... 9, 23, 25, 29, 33

*In re Barker,* 151 Cal.App.4th 346 (2007) ........................................... 9, 15, 22, 26

9
*In re Cooper,* 153 Cal.App.4th 1043 (2007) (Rev. Grntd., August 6, 2007, No. S155130) ............ 19

10
*In re Dannenberg,* 34 Cal.4th 1061 (2005) ..................................... 9, 12, 17, 21

11
*In re Dannenberg,* 156 Cal.App.4th 1387 (Rev. Grntd., February 13, 2008, No. S158880) (2007) ... 19, 23, 26

12
*In re Duarte,* 143 Cal.App.3d 943 (1983) ........................................ 17

13
*In re Elkins,* 144 Cal.App.4th 475 (2006) .......................... 9, 12, 19, 23, 24, 26, 34

*In re Gray,* 151 Cal.App.4th 379 (2007) ................................. 9, 20, 26, 34

14
*In re Jackson,* 39 Cal.3d 464 (1985) ................................................. 31, 32

15
*In re Lawrence,* 150 Cal.App.4th 1511 (2007) (Rev. Grntd., July 2, 2007, No. S154018) ...... 8, 20, 26

16
*In re Lee,* 143 Cal.App.4th 1400 (2006) ..................................... 9, 20-24, 26, 34

17
*In re Lowe,* 130 Cal.App.4th 1405 (2005) ........................................... 23

18
*In re Lozano,* 2007 WL 117709 (Cal.App. 3 Dist. 2007) ................................ 32

19
*In re Montgomery,* 156 Cal.App.4th 930 (Rev. Grntd., February 28, 2008, No. S159141) (2007)............ 19, 34

*In re Ramirez,* 94 Cal.App.4th 549 (2001) ............................................ 13

20
*In re Roderick,* 154 Cal.App.4th 242 (2007) ................................. 9, 11, 15, 22

21
*In re Rosenkrantz,* 29 Cal.4th 616 (2002).............................. 8, 15, 21, 26

22
*In re Scott,* 119 Cal.App. 4th 871 (2004)............................................ 13, 21

23
*In re Scott,* 133 Cal.App. 4th 573 (2004)......................... 8, 12, 19, 21, 23, 24, 26

24
*In re Smith,* 114 Cal.App.4th 343 (2003) ......................................... 9, 11, 13, 14

25
*In re Tripp,* 150 Cal.App.4th 306 (2007).................................................. 15

26
*In re Weider,* 145 Cal.App.4th 570 (2006) ........................................... 12

27
*Irons v. Carey,* 479 F.3d 658 (9th Cir. 2007) ................................ 23, 27, 29

28

# TABLE OF AUTHORITIES

## (continued)

### Cases

*Irons v. Warden*, 358 F.Supp.2d 936 (E.D.Cal. 2005)................................................... 30

*Martin v. Marshall*, 431 F.Supp.2d 1038 (N.D. Cal. 2006) ........................................ 8, 18

*Martin v. Marshall*, 448 F.Supp.2d 1143 (N.D. Cal. 2006) ........................................ 8, 34

*McQuillion v. Duncan*, 306 F.3d 895 (9th Cir. 2002) ...................................................... 8

*Nikooseresht v. Curry*, 2007 WL 2088558 (N.D.Cal. 2007) ........................................... 18

*People v. Belmontes* (1983) 34 Cal.App.3d 335............................................................. 32

*People v. Wright*, 30 Cal.3d 705 (1982) ....................................................................... 16

*Rosenkrantz v. Marshall*, 444 F.Supp.2d 1063 (C.D. Cal. 2006)................................... 8, 19, 24, 34

*Sanchez v. Kane*, 444 F.Supp.2d 1049 (C.D. Cal. 2006) .............................................. 8, 34

*Sass v. Cal. Board Of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006)................................ 27

*Terhune v. Superior Court*, 65 Cal.App.4th 864 (1998)................................................... 16

*Thomas v. Brown*, 2006 WL 3783555 (N.D. Cal. 2006) ................................................. 19

*Turner v. Hickman*, 342 F.Supp.2d 887 (E.D. Cal. 2004) ............................................. 16

*Willis v. Kane*, 485 F.Supp.2d 1126 (N.D. Cal. 2007) ................................................... 18

### Statutes

Pen.C. § 3000........................................................................................................... 13

Pen.C. § 3041............................................................1, 8-11, 13, 17-18, 20-21, 23-24, 30-31, 33

Pen.C. § 3041.5 ......................................................................................................... 31

### Regulations

15 CCR § 2000 ............................................................................................................. 4

15 CCR § 2050 ............................................................................................................. 2

15 CCR § 2401 ..................................................................................... 1, 8-11, 20, 33

15 CCR § 2402 ................................................................... 1, 8-11, 14-15, 20, 22-24, 31-33

15 CCR § 2403 ............................................................................................................. 5

15 CCR § 2410 ............................................................................................................. 5

CLARK v. HERNANDEZ; Petition for Writ of Habeas Corpus

1    LINDA BUCHALTER
     State Bar No. 139331
2    1011 5th Street, # 6
     Santa Monica, CA 90403
3    Telephone (310) 393-7033

4    Counsel for Petitioner
     JOSEPH CLARK
5

6

7                   UNITED STATES DISTRICT COURT

8               SOUTHERN DISTRICT OF CALIFORNIA

9

10

| | |
|---|---|
| 11   JOSEPH CLARK, | Case No. _____ |
| 12             Petitioner, | **PETITION FOR WRIT** |
| 13     v. | **OF HABEAS CORPUS;** **MEMORANDUM OF** |
| 14   ROBERT HERNANDEZ, Warden, | **POINTS & AUTHORITIES;** **EXHIBITS** |
| 15           Respondent. | |

16

17       Because the Board of Parole Hearings (BPH) in its decision of August

18   10, 2005, denying a grant of parole to Joseph Clark cited no evidence

19   suggesting that Mr. Clark currently posed an "unreasonable risk of danger" to

20   public safety, the State's codified standard below which parole "shall" be

21   granted (Pen.C. § 3041(a); 15 CCR §§ 2401, 2402(a)), the panel's decision

22   reciting that phrase flunks the some evidence test and denied due process. Mr.

23   Clark accordingly seeks an order vacating that decision and directing BPH to

24   conduct a new hearing for the sole purpose of determining his prison term and

25   a parole date, to release Mr. Clark on said date or immediately if it has lapsed,

26   and to reduce his parole term by the amount of time by which his imprisonment

27   has exceeded said term and by any applicable statutory and regulatory term

28   credits to which he is entitled.

## PRELIMINARY REQUIREMENTS

*The Petition is Timely*.  The Petition is submitted within AEDPA time constraints.  The California Supreme Court denied a petition for review on October 24, 2007.  Exhibit G.

*Petitioner is in Custody*  Petitioner is confined by the California Department of Corrections and Rehabilitation (CDCR) at R. J. Donovan Correctional Facility Facility, San Diego, California, Robert J. Hernandez, Warden.

*Exhaustion of State Administrative Remedies.*  No administrative remedy exists for Petitioner's claims.  BPH amended its regulations to eliminate administrative appeals of its parole decisions in May 1, 2004.

*Exhaustion of State Court Remedies.*  The Los Angeles County Superior Court (exhibit E), and California Court of Appeal (exhibit F) denied a habeas corpus petition raising the instant claims.  The California Supreme Court denied a petition for review on October 24, 2007.  Exhibit G.

## STATEMENT OF THE CASE AND FACTS
### The Commitment Offense

According to the Probation Department's sentencing report (exhibit B), Petitioner, the victim, and two companions were drinking at a bar, the victim insulted Petitioner, and the two argued.  Petitioner and his two companions went to another bar where he met and again argued with the victim.  While Petitioner was walking home he told his companions that he was "tired of this" and was going to slash the victim's throat.  Petitioner was then observed sharpening a knife and an axe.  When the victim arrived Petitioner jumped on him, stabbing him multiple times and slashing his throat.  As Petitioner was

wrapping the victim's body in a mattress cover, the police, alerted by a neighbor, arrived and arrested him.

Petitioner, age 26, gave a full confession and pled guilty at an early stage. He has always accepted blame and responsibility for the offense, admitting his former substance abuse and "bad choices." See exhibit C, p. 22. Petitioner drank three to four beers about twice a week, used marijuana about twice a month starting at age 14, and completed a drug rehabilitation program while in the Army. Exhibit B, p. 6.

### Petitioner's Prior Criminal Record

Mr. Clark had no juvenile criminal record. His prior adult record was non-violent: two suspended 30-day jail terms for disturbing the peace in Los Angeles in 1978, and a 1980 petty theft in Washington State. Exhibit B, p. 5; exhibit C, p. 23.

### Petitioner's Sentence and Commitment

The commitment offense was a 1985 second-degree murder. On January 6, 1986, pursuant to a negotiated plea the Los Angeles County Superior Court (case No. A912667[1]) imposed the prescribed prison term, 15 years-to-life with the possibility of parole, plus a one-year weapon enhancement. The Court awarded 181 days of pre-sentencing term credit. Exhibit A. Petitioner was committed to prison on January 22, 1986. Allowing for pre-commitment term credits, his indeterminate term commenced on May 20, 1986. His minimum

---

[1] The 2005 BPH panel incorrectly stated the case number to be "LA892667." Exhibit C, p. 1.

eligible parole date (MEPD),[2] on which he became eligible to be released on parole, lapsed on December 27, *1995*.  Exhibit C, p. 1.

### Petitioner's Post-Conviction Record

Petitioner has established an exemplary record of conduct and reform. During his first four years in prison (1986 to 1990) he received three non-violent infractions.  For the 15-year period starting in 1990 he had been disciplinary-free.  While in prison Mr. Clark obtained his high school diploma, completed significant college courses, obtained certificates in Real Estate law and as a Paralegal, became state-certified in Upholstering, completed 700 hours in Vocational Landscaping and accumulated substantial credits toward State certification in Small Business and Welding.  His work supervisors' reports have been excellent and his file contains several laudatory memoranda from staff for his conduct and reform.

Mr. Clark has exercised his right not to participate in faith-based programs such as AA and NA.  He is willing to attend non-faith based substance abuse programs but none are available.

### Forensic Evaluation of Mr. Clark's Parole Risk

Mr. Clark was subjected to an exhaustive evaluation by Dr. Robertson, a forensic psychiatrist.  Based on his commitment offense and prior record, his social, family, developmental, educational, military, employment and psychiatric histories, and his parole plans, Dr. Robertson concluded that

---

[2] The MEPD (minimum eligible parole date)  is "the earliest date on which an ISL or life prisoner may legally be released on parole."  15 CCR § 2000(a)(67).

Petitioner's parole risk is *less than average* and that the probability of alcohol relapse is "quite low." Exhibit D, p. 5.

### The Prescribed Minimum and Maximum Prison Terms for the Facts of Petitioner's Commitment Offenses

Mr. Clark became eligible to be released on parole ***more than twelve years ago*** on his MEPD, December 27, ***1995***. Exhibit C, p. 1. The ***maximum*** (aggravated) base prison term, given the facts of his offense, is 19 years (228 months). See 15 CCR § 2403(c) (second-degree murder), subsec. III B (prior relationship to victim; death almost immediate). Applying 60 months of post conviction term credit (4 months for each disciplinary-free year of confinement per 15 CCR § 2410), would result in a total period of confinement of 168 months.

Considering the date Petitioner was committed, January 22, 1986, and applying 181 days of pre-sentencing term credit awarded by the court (exhibit A, p. 1), Mr. Clark's parole release date should have occurred in ***July 1999*** at the latest.

### Parole Hearings 1995-2005

At his initial BPH parole hearing in 1995[3] Mr. Clark was denied parole for two years based largely on his commitment offense. At his 1997, 2001, and 2005 hearings, all of which were conducted late, pursuant to BPH's policy of alleviating its backlog of thousands of hearings by doling out multi-year denials, he was again found unsuitable for parole based on his offense and issued 4, 3, and 3 year denials respectively. Accordingly, since one year before

---

[3] The transcript of petitioner's 2005 parole hearing is attached as exhibit C. Petitioner will lodge transcripts and any referenced documents not included in the exhibits upon the Court's request.

Petitioner became eligible to parole on his MEPD in 1995, he has been denied parole for 12 years until at least 2008 based on his second-degree murder commitment offense and, as the extraordinary length of the setoffs indicate, he can never parole because neither the basis for finding him unsuitable each time nor his current maximum level of parole suitability otherwise can ever improve.

### 2005 Parole Hearing

At his fourth late parole hearing conducted on August 10, 2005, a decade after he became eligible to parole, another BPH panel found Mr. Clark unsuitable and again set off his next parole hearing for three more years until 2008. The panel recited its codified decision:

> You are not suitable for parole . . . *you would pose an unreasonable risk of danger to society or threat to public safety* if released from prison at this time.

The panel then recited three boilerplate findings for its "unreasonable risk" decision:

> . . . the main reason that we are going to deny you sir is because of the gravity and heinousness of this *offense* [which was] carried out in an especially cruel, callous and heinous manner . . . in a dispassionate and calculating manner

> . . . you have an *unstable social history*, prior criminality which includes the extensive use of alcohol . . . you are a high school dropout and that you have arrests and or convictions of disturbing the peace, vandalism, fighting, larceny, petty theft, and possession of stole property. The record further reflects that you received a general discharge from the army because of your inability to refrain from abusing alcohol.

> . . . the Board of Prison Terms recommended that you *participate in self help specifically to address your alcohol*

CLARK v. HERNANDEZ; Petition for Writ of Habeas Corpus - Page 6

*dependence* . . . According to the record during this review period you have not complied with that requirement.

Exhibit C, pp. 81-84 (emphasis added).

In an alleged "separate" decision the panel set off Mr. Clark's subsequent hearing for another three years (two years more than the standard one-year denial) based on the panel's recitation of the identical factors it recited moments earlier explaining its unsuitability decision. Exhibit C, p. 84 et seq.

## STATE COURT RULINGS ON PETITIONER'S CLAIMS

On December 27, 2006, the Los Angeles County Superior Court denied a similar habeas corpus petition. The order of denial is lodged as exhibit E. The court found no evidence to support the panel's unstable social history and prior criminal record findings. The court held that the facts of the commitment offense will serve, ***apparently forever***, as a means of precluding Mr. Clark's parole. The court did not address the due process issues of whether the evidence of the two-decades old commitment offense indicates that Mr. Clark still poses an unreasonable parole risk to public safety, whether there is any nexus between the panel's findings for unsuitability and his current, forensically determined low parole risk, whether the commitment offense can be used interminably to deny parole, whether he can be denied parole for failure to participate in nonexistent therapy, and whether the panel could offset his next hearing by an extra two years without stating any ground suggesting that he could not be found suitable in one year.

The some evidence test required the court to find some evidence supporting the panel's *decision* that Mr. Clark's parole currently poses "an unreasonable risk of danger" to public safety, the State's codified standard

below which parole "shall" be granted. Pen.C. § 3041(a); 15 CCR §§ 2401, 2402(a). Had the court addressed that issue and applied the some evidence standard to the state's statutory parole requirement, it could not have found *any* evidence supporting the "unreasonable risk" decision.

Petitioner's habeas petition was denied by the California Court of Appeal on August 8, 2007 (exhibit F), and his petition for review was denied by the California Supreme Court on October 24, 2007 (exhibit G); neither court addressed the claims or imposed a procedural bar.

## REQUIREMENTS OF DUE PROCESS; STANDARD OF REVIEW

1. State parole law provides inmates a liberty interest in parole protected by due process. *McQuillion v. Duncan,* 306 F.3d 895, 901-903 (9th Cir. 2002) [*McQuillion*]; *In re Rosenkrantz,* 29 Cal.4th 616, 621 (2002) [*Rosenkrantz*].

2. Petitioner's protected liberty interest required his being granted parole because he has been eligible to parole since *1995* and has been consistently evaluated **not** to pose an "unreasonable risk of danger" to public safety, the State's parole suitability standard, below which a panel "shall" set a parole release date. Pen.C. § 3041(a); 15 CCR §§ 2401, 2402(a).

3. Although a prisoner like Petitioner who qualifies for parole may initially be found unsuitable if the commitment offense was particularly egregious compared to other instances of the offense, such cases are *exceptions*, and commitment offenses cannot justify *repeated* or *interminable* parole denials. *Biggs v. Terhune,* 334 F.3d 910, 916 (9th Cir. 2003) [*Biggs*]; *Martin v. Marshall,* 431 F.Supp. 2d 1038, 1046-1047 (N.D. Cal. 2006) amended at 448 F.Supp.2d 1143; *Sanchez v. Kane,* 444 F.Supp.2d 1049, 1062 (C.D. Cal. 2006); see *Rosenkrantz v. Marshall,* 444 F.Supp.2d 1063, 1080-1087 (C.D. Cal. 2006); *In re Scott, supra,* 133 Cal.App.4th at 595; *In re*

1  *Lawrence,* 150 Cal.App.4th 1511, 1554-1556 (Rev. Grntd., July 2, 2007, No.

2  S154018) (2007); *In re Gray,* 151 Cal.App.4th 379 (2007); *In re Barker,* 151

3  Cal.App.4th 346, 374-375 (2007).

4      4. If a BPH panel uses offense facts and other unchangeable factors to

5  justify a finding of parole unsuitability, it must articulate some *nexus* to the

6  State's codified standard by explaining ***how such factors make the prospective***

7  ***parolee a current "unreasonable risk of danger" to public safety*** if paroled;

8  otherwise such offense factors do not amount to "some evidence" that granting

9  parole creates an "unreasonable risk of danger" to public safety.  See Pen.C. §

10  3041, 15 CCR §§ 2401, 2402(a); *In re Dannenberg,* 34 Cal.4th 1061, 1082-

11  1084 (2005) ["public safety...takes precedence"...the "paramount

12  assessment"...]; *In re Lee,* 143 Cal.App.4th 1400 , 1407-1412 (2006); *In re*

13  *Elkins,* 144 Cal.App.4th 475, 502 (2006); please see authorities cited at pp. 17-

14  25 below, and the Ninth Circuit's recent decision, *Hayward v. Marshall*, 512

15  F.3d 536 (9th Cir. 2008).

16      5. If BPH's forensic psychologists, having considered the entire record

17  including the commitment offense, determine that the subject's parole poses a

18  low risk of danger to public safety, the panel, whose commissioners have no

19  particular qualifications by education or training to predict recidivism, in

20  reciting that the subject's parole <u>would</u> pose an unreasonable risk of danger to

21  public safety, must point to ***evidence*** demonstrating the contrary to be true, i.e.,

22  evidence in the record showing that the factors it recites render the subject an

23  unreasonable public safety risk despite their experts' contrary determinations.

24  See *In re Roderick,* 154 Cal.App.4th 242, 272, fn. 27 (2007); *In re Smith,* 114

25  Cal.App.4th 343, 348-349 (2003) [such findings amount to "unsubstantiated

26  speculation and as such (are) arbitrary and capricious"].

27

28

# PETITIONER'S CONSTITUTIONAL CLAIMS

**I.**    **The Denial of Mr. Clark's Parole Based on Arguably Applicable Factors of a 20-year Old Second-Degree Murder Offense and Failure to Participate in a Non-existent Substance Abuse Program Violated his Right to Due Process, Because he has Been Determined Forensically to Pose a Below Average Parole Risk, far Below the Codified "Unreasonable Risk" Standard, Because the Facts Recited No Longer Bear Any Nexus to his Current Parole Risk, and Since Neither Those Immutable Facts nor the Forensically Determined Below Average Parole Risk he has Indisputably Achieved can ever Improve, the Process has Converted his Prison Term to Life Without the Possibility of Parole and Extinguished his Protected Liberty Interest in Parole**

**A.**    **No Evidence Supports the Notion that Mr. Clark Posed an "Unreasonable Risk of Danger to Society or a Threat to Public Safety"**

The sole ground stated by the BPH panel for denying Mr. Clark's parole was its boilerplate statement that his parole would pose "an unreasonable risk of danger to society or a threat to public safety" (exhibit C, p. 81), the State's codified suitability standard below which a parole date "shall" be set. See Pen.C. § 3041; 15 CCR §§ 2401, 2402(a). The findings set forth by the panel in support of that conclusion are detailed in the following section. Preclusion of parole on this ground denied due process because it was supported by **no** evidence whatsoever and is inapposite to the record. The only reliable evidence assessing Mr. Clark's current dangerousness and parole risk was his forensic psychological evaluation, which concluded that his risk on parole is

low ("*less dangerous than the average inmate*"), well below the panel's "unreasonable risk" recitation.  Exhibit D, p. 5; see pp. 4-5 above.

The panelists, having no known qualification by training or education to predict recidivism, offered *no evidence*, just an unsupported conclusory statement that Mr. Clark's parole would "pose an unreasonable risk of danger." They considered exactly the same record – including Mr. Clark's offense and prior record - considered by the Board's forensic expert, who determined that Mr. Clark would pose a below average risk of danger if released on parole. Exhibit D, p. 5.   Please see *In re Smith, supra*, 114 Cal.App.4th at 369 [absent actual evidence negating Governor's assessment of subject's current parole risk, "the Governor's view [of] Smith's propensity for violence . . . is unsubstantiated speculation and as such appears to be arbitrary and capricious"]; *In re Roderick, supra*, 154 Cal.App.4th at 272, fn. 27.

Because the forensic evaluation of Mr. Clark's parole risk is well below the State's codified "unreasonable risk of danger" standard, <u>requiring</u> a grant of parole (Pen.C. § 3041; 15 CCR §§ 2401, 2402(a)), <u>and</u> because no evidence cited by the untrained panel supports its decision that Mr. Clark poses "an unreasonable risk of danger to public safety," the decision flunks the "some evidence" test and violated Mr. Clark's right to due process.

## B.  **The Panel's Findings Also Flunk the *Some Evidence* Test**

### **FINDING 1: The Commitment Offense**

> . . . the ***main reason*** that we are going to deny you sir is because of the gravity and heinousness of this offense [which was] carried out *in an especially cruel, callous and heinous manner . . . in a dispassionate and calculating manner*

Exhibit C, p. 81 (emphasis added).

1    It is indisputable that Mr. Clark has shouldered full responsibility and

2  complete culpability for what he admits was a particularly severe second-

3  degree murder.  He has stipulated that most of the adjectives and phrases

4  recited by the panel apply to his offense, which constitutes its only arguably

5  tenable ground for finding him unsuitable for parole.  The impropriety of using

6  Mr. Clark's offense to preclude his parole interminably is argued in the

7  following section.

8    Because the codified offense factors dutifully recited by the panel were

9  immutable and irrelevant to Mr. Clark's current parole risk, denying him parole

10  on this basis was arbitrary and denied due process.  See *In re Elkins, supra,* 144

11  Cal.App.4th at 495 ["The commitment offense can negate suitability only if

12  circumstances of the crime reliably established by evidence in the record

13  rationally indicate that the offender will present an unreasonable public safety

14  risk if released from prison.  Yet, the predictive value of the commitment

15  offense may be very questionable after a long period of time [citations] . . .

16  denial of release based solely on the basis of the gravity of the commitment

17  offense warrants especially close scrutiny [citation]; *In re Weider,* 145

18  Cal.App.4th at 586-587, 589 [the panel denied parole because "the

19  commitment offense was carried out in ***an especially cruel and callous***

20  ***manner.*** . . murder is defined as the unlawful killing of a human being *with*

21  *malice aforethought* . . .Malice  itself involves 'an element of viciousness-an

22  extreme indifference to the value of human life' [] . . .all . . . murders will

23  involve some amount of viciousness or callousness. [citation] . . . the

24  overarching consideration in the suitability  determination is whether the

25  inmate is currently a threat to public safety (*Dannenberg, supra,* 34 Cal.4th at

26  1071, 1083, 1085-1086; *Scott,* 133 Cal.App.4th at 591) . . . Weider's (act in the

27

28

murder) does not rationally indicate that he will present an unreasonable public safety risk if released from prison [citation]"]; *In re Scott, supra,* 119 Cal.App.4th at 891-892: ["... parole is the rule, rather than the exception, and a conviction (of murder) does not automatically render one unsuitable" (quoting *In re Smith,* 114 Cal.App.4th 343, 366 (2003)) '[a]ll violent crime demonstrates the perpetrator's potential for posing a grave risk to public safety, yet parole is mandatory for violent felons serving determinate sentences (Pen.Code, § 3000, subd. (b)(1))' ... And the Legislature has clearly expressed its intent that when murderers-who are the great majority of inmates serving indeterminate sentences-approach their minimum eligible parole date, the Board 'shall normally set a parole release date.' (Pen.Code, § 3041, subd. (a)) . . . The Board's authority to make an exception based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted . . . to demonstrate 'an *exceptionally callous disregard for human suffering*' . . .the offense in question must have been committed in a more aggravated or violent manner than that ordinarily shown in the commission of . . . murder . . .[citing *In re Ramirez, supra,* 94 Cal.App.4th at pp. 558, 568]... As in *In re Smith, supra,* 114 Cal.App.4th 343, there is no evidence Scott 'tormented, terrorized, or injured [his victim] before deciding to shoot [him], or that he gratuitously increased or unnecessarily prolonged [his] pain and suffering . . . Was the crime callous? Yes. However, do the facts distinguish this crime from other second degree murders as exceptionally callous? No.' (*Id.* at p. 367.) . . . the Board's use of this factor to conclude that Scott committed his offense 'in an *especially cruel and callous manner*' was arbitrary and capricious"]; *In re Smith, supra,* 114 Cal.App.4th 343, 367 ["... There is no evidence that Smith acted with cold, calculated, dispassion; or that he tormented, terrorized, or injured Garner before deciding

to shoot her; or that he gratuitously increased or unnecessarily prolonged her pain and suffering"].

Counsel for Petitioner respectfully asks the Court to take judicial notice of a recent decision by the Santa Clara County Superior Court, attached as exhibit H.  The decision, filed on August 30, 2007, following a comprehensive compilation of BPH hearing results in 2,690 cases and an evidentiary hearing including expert testimony regarding the statistical interpretation of that exhaustive survey, concluded:

> Thus, it was shown that 100% of commitment offenses reviewed by the Board during the 13 months under examination [a total of 2,690 cases] were found to be "especially heinous, atrocious or cruel" under Title 15 § 2402 [2281] (c)(1)…[The size of] the samples in each case, which consisted of two or three months of Board decisions, are statistically sufficient to draw conclusions about the entire population of life term inmates currently facing parole eligibility hearings.  Exhibit H, pp. 9, 10.

> …The evidence proves that…*every such offense* has been found to be "particularly egregious" or "especially heinous, atrocious or cruel." [FN]  This evidence conclusively demonstrates that *the Board completely disregards the detailed standards and criteria of § 2402[2281](c)*…[T]*he evidence shows that the determinations of the Board in this regard are made not on the basis of detailed guidelines and individualized consideration, but rather through the use of all encompassing catch phrases gleaned from the regulations*…Because it makes *no effort to distinguish the applicability of the criteria between one case and another, the Board is able to force every case of murder into one or more of the categories contained in § 2402[2281] (c)*…  Exhibit H, pp. 12-13 (emphasis added).

> What this reduces to is nothing less than a *denial of parole for the very reason the inmates are present before the Board* – i.e. they committed murder [or kidnapping]…"As stated quite plainly by the Sixth District: "A conviction for murder does not automatically render someone unsuitable for parole."  (*In re*

CLARK v. HERNANDEZ; Petition for Writ of Habeas Corpus - Page 14

*Smith*, 114 Cal.App.4[th] at p. 366, citing *In re Rosenkrantz*, 29 Cal.4[th] at p. 683.)...The Board's formulaic practice of stating § 2402 [2281] (c)(1) phrased in a conclusory fashion, and then stating "this is derived from the facts" without ever linking the two together is insufficient. *In re Roderick* (2007) ___ Cal.App.4[th] ___ (A113370): "At minimum, the Board is responsible for articulating the grounds for its findings and for citing to evidence supporting those grounds." (See also *In re Barker* (2007) 151 Cal.App.4[th] 346, 371, disapproving "conclusorily" announced findings.) Exhibit H, pp. 14, 16 (emphasis added).

"The evidence must substantiate the ultimate conclusion that the prisoner's release currently poses an unreasonable risk of danger to the public. It violates a prisoner's right to due process when the Board or Governor attaches significance to evidence that forewarns no danger to the public." (*In re Tripp* (2007) 150 Cal.App.4[th] 306, 313.)...This is especially significant when the murder conviction is based on the felony murder rule, provocative act doctrine, or accomplice liability such that the inmate did not intend to kill or may not have even been the actual killer. Exhibit H, pp. 16-18.

***The evidence presented, as discussed above, has established a void for vagueness "as applied" due process violation. That same evidence also proves a separate but related Constitutional violation – an as applied separation of powers violation.*** Exhibit H, p. 18 (emphasis added).

...The Board, by its enactment and interpretation of Title 15, § 2402 [2281], has appropriated to itself absolute power over 'lifer' matters. Overreaching beyond the letter and spirit of the Penal Code provisions, *Title 15, § 2402[2281] (c)(1) has been interpreted by the Board to supply the power to declare every crime enough to deny parole forever.* The fact that Title 15, § 2402 [2281], has been invoked in every case, but then sometime later not invoked, tends to show either completely arbitrary and capricious behavior or that unwritten standards are what really determines outcomes. In either event, all pretenses of taking guidance from, or being limited by, the legislature's statutes have

been abandoned...***The Board employs no meaningful yardstick in measuring parole suitability.*** This is a violation of the separation of powers doctrine. (*People v. Wright* (1982) 30 Cal.3d 705, 712-713. And see *Terhune v. Superior Court* (1998) 65 Cal.App.4[th] 864, 872-873.) Exhibit H, pp. 20-21 (emphasis added).

The *Criscione* Court concluded that the exceptionally heinous, atrocious, or cruel parole criterion and sub-criteria utilized by the BPH to deny parole in **every** **case** is vague and arbitrary, thus unconstitutional. That is precisely the process by which Mr. Clark was denied parole.

### FINDINGS 2 and 3: "unstable social history" and "prior criminality"

The superior court struck these findings because they were inapplicable and supported by no evidence in the record. The Board did not appeal.

### FINDING 4: Failure to Participate in a Substance Abuse Program

The panel made much about Petitioner's non-participation in A.A., N.A., or another such program. Exhibit C, pp. 83-84. Mr. Clark has asserted his First Amendment right not to participate in faith-based programs like A.A. and N.A., the only substance abuse programs available at his institution (and most institutions). Because parole cannot be constitutionally denied based on a prospective parolee's refusal to participate in N.A., A.A., or other faith-based programs (*Turner v. Hickman,* 342 F.Supp.2d 887 (E.D. Cal. 2004)), because no other effective substance abuse program has been made available to Petitioner, and because the Board's forensic psychiatrist determined that petitioner had refrained from substance abuse for 15 years, was unlikely to re-abuse, and therefore posed a low parole risk to public safety (exhibit D, p. 5),

CLARK v. HERNANDEZ; Petition for Writ of Habeas Corpus - Page 16

finding him unsuitable for parole on this basis flunks the some evidence test and abrogated his protected liberty interest in parole.

**C.  The Panel's Decision Based on Arguably Applicable, Immutable Commitment Offense Factors Flunks the Some Evidence Test and Violated Due Process Because the Panel Suggested no Bearing Such Facts Have Upon the State's Sole Parole Suitability Determinant – Whether Mr. Clark's Parole Currently Posed an "Unreasonable Risk of Danger" to Public Safety**

The California Supreme Court has long held that a prospective parolee's potential *risk to public safety* is by far the overriding, if not the *only* statutory determinant in deciding whether to grant parole to a qualified inmate like Mr. Clark.  In *In re Duarte,* 143 Cal.App.3d 943 (1983), the Court explained that under section 3041, "the Legislature left a 'consideration of the public safety' as the *fundamental criterion in assessing suitability*." *Id.* at 948 (emphasis added).  The Court's latest decision in *Dannenberg,* relied on by the Board, is unequivocal on this issue:

> Applying these principles, we first note the obvious. The words of section 3041 strongly suggest that the *public-safety* provision of subdivision (b) takes precedence . . . the suitability determination should focus upon the *public safety risk* posed by "this individual" . . . overriding statutory concern [is] for *public safety in the individual case* . . . determination of suitability for parole involves a paramount assessment of the *public safety risk* posed by the particular offender . . .

*Dannenberg*, 34 Cal.4th at 1082-1084 (emphasis added).

A plethora of state and federal court decisions issued within the past two years emphatically hold that a BPH panel's recitation of commitment offense and other immutable facts is an insufficient basis to deny parole and flunks the some evidence test absent the panel's citation of evidence demonstrating that the facts recited continue to render the subject a current unreasonable risk of danger to public safety.  See, e.g., *Willis v. Kane*, 485 F.Supp.2d 1126, 1135 (N.D. Cal. 2007)  ["Notwithstanding the terrible nature of the crime, the critical question the BPH was supposed to decide at the parole suitability hearing was whether 'consideration of the public safety requires a more lengthy period of incarceration for this individual' *See* Cal. Penal Code § 3041(b) . . . Willis' 1983 crime did not provide sufficient evidence to find him unsuitable for parole in 2003"]; *Martin v. Marshall*, 431 F.Supp.2d 1038, 1049 (N.D. Cal. 2006); *Nikooseresht v. Curry*, 2007 WL 2088558 (N.D. Cal. 2007) at *6 ["petitioner's commitment offense cannot by itself constitute some evidence of unsuitability for parole because it fails to establish a basis for determining that petitioner continues to pose an unreasonable risk of danger to society]; *Fowler v. Butler*, 2007 WL 1555726 (E.D. Cal. 2007) at *9 (adopted as judgment June 13, 2007) ["the record  . . . does not, however, show any facts which suggest that the circumstances of the crime were sufficiently callous, or the motive for petitioner's actions sufficiently trivial, that sixteen years after the offense the circumstances of the crime would still suggest that petitioner remained a danger to society. Absent such facts, the Board's reliance on petitioner's criminal conviction to support the denial of parole violates petitioner's right to due process"]; *Brown v. Kane*, 2007 WL 1288448 (N.D. Cal. 2007) at *7 ["Petitioner's commitment offense would be a sufficient basis to deny his parole if it indicated a risk of re-offending and of a danger to society. It does not . . . Not only did the Governor and state courts fail to point to any such

indicators, but Brown's ultimately positive prison record over the past two and a half decades indicates, as the BPT concluded, that he is suitable for parole"]; *Blankenship v. Kane*, 2007 WL 1113798 at *10 (N.D. Cal. 2007) ["... the California regulations require ... some evidence that the prisoner poses a present danger to society ... continued reliance over time on an unchanging factor ... the commitment offense ... does not provide evidence of a present danger to society"]; *Thomas v. Brown*, 2006 WL 3783555 at *6 (N.D. Cal. 2006) [not some evidence that the murder shows current parole unsuitability]; *Rosenkrantz v. Marshall*, 444 F.Supp. 2d 1063, 1086 (C.D. Cal. 2006) ["the facts surrounding Petitioner's crime no longer amount to 'some evidence' supporting the conclusion that Petitioner would pose an unreasonable risk of danger if released on parole"].  See also State decisions: *In re Dannenberg,* 156 Cal.App.4th 1387, 1397-1398 (Rev. Grntd., February 13, 2008, No. S158880) (Rev. Grntd., February 28, 2008, No. S159141) (2007) ["uphold(ing the) *finding* [that offense was "especially heinous" does not mean that due to offense petitioner] *currently* poses an unreasonable risk of danger to society..."]; *In re Montgomery,* 156 Cal.App.4th 930, 944, 947 (2007) ["Because the overarching consideration is public safety, the test in reviewing the Board's decision denying parole " 'is not whether some evidence supports the *reasons* [the Board] cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety.' " [citation]; *In re Cooper*, 153 Cal.App.4th 1043, 1066-1067 (2007) (Rev. Grntd., August 6, 2007, No. S155130) [not "some evidence ... establishing that the gravity of Cooper's offense shows him unsuitable for release"]; *In re Scott, supra,* 133 Cal.App. 4th at 595 ["the commitment offense can negate suitability only if circumstances of the crime ... rationally indicate that the offender will present an unreasonable public safety risk if released from prison"]; *In re Elkins,*

CLARK v. HERNANDEZ; Petition for Writ of Habeas Corpus - Page 19

*supra,* 144 Cal.App.4[th] at 496, 499 ["Thus, a governor, in reviewing a suitability determination, must remain focused not on circumstances that may be aggravating in the abstract but, rather, on facts indicating that release currently poses 'an unreasonable risk of danger to society'"]; *In re Lee, supra,* 143 Cal.App.4[th] at 1413 ["... the board and Governor must focus their parole decisions on whether a prisoner continues to pose an unreasonable risk to public safety"]; *In re Lawrence, supra,* 150 Cal. App.4[th] at 1554-1556 (Rev. Grntd., July 2, 2007, No. S154018); *In re Gray, supra,* 151 Cal.App.4[th] 379 (2007).

As these recent state and federal decisions hold, due process and the State's parole scheme (Pen.Code § 3041; 15 CCR §§ 2401, 2402(a)) clearly require the articulation of a nexus between the offense facts recited and a prospective parolee's current parole risk, the State's overarching parole determinant. Because none was set forth by the panel or *exists,* denial of parole based on a recitation of offense factors was arbitrary and violated due process.

Put another way, in order to apply the some evidence standard, a reviewing court must first ask the pivotal question, "Some evidence of WHAT"?  The question is answered by the State's parole determination statute:  The offense facts must demonstrate that the "timing" or "gravity" of the commitment offense renders the inmate's parole a *current* public safety risk (every prospective parolee was dangerous when he or she committed a life offense).  Pen.Code. § 3041(b).

*What* did the panel say about the "timing" of Mr. Clark's offense that makes him a current parole risk to public safety?  *Nothing.*

*What* did the panel say about how or why the "gravity" of the offense ***makes Mr. Clark a current public safety risk***?  *Nothing.*  The panel offered no hint at how the facts it disputes ***still serve to make Petitioner a public safety***

*risk if paroled*. The omission was crucial because the State's forensic expert

had determined that Mr. Clark posed a below average parole risk to public

safety.

Some of the most recent Court of Appeal decisions cited above explain

in detail why due process requires that, in order to deny parole the Board must,

irrespective of the facts of the commitment offense or subsequent events, set

forth evidence suggesting that the subject still would pose an unreasonable risk

to public safety if paroled.

> ***Thus, it is not enough that there is some evidence to support the factors cited for denial; that evidence must also rationally support the core determination required by the statute before parole can be denied, i.e., that a prisoner's release will unreasonably endanger public safety***. ( *In re Lee* (2006) 143 Cal.App.4th 1400, 1408, 49 Cal.Rptr.3d 931 ( *Lee* ); *In re Scott* (2005) 133 Cal.App.4th 573, 595, 34 Cal.Rptr.3d 905 ( *Scott II* ).) "Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety." (*Lee, supra,* 143 Cal.App.4th at p. 1408, 49 Cal.Rptr.3d 931.) The dissent's proposed standard of review would require judicial affirmation of every Board decision if even a single unsuitability factor is found, regardless of whether that factor would rationally support a conclusion, based on individualized consideration, that the inmate would pose an unreasonable risk of danger . . If this were the standard, the courts would indeed be relegated to the status of potted plants. ( *Scott I, supra,* 119 Cal.App.4th at p. 898, 15 Cal.Rptr.3d 32.)
>
> ***The only ground for a parole denial is*** found in Penal Code section 3041, subdivision (b), which provides that a release date shall be set "unless [the Board] determines ***that ... consideration of the public safety requires a more lengthy period of incarceration***." Interpreting that standard, our high court has required that the Board's decisions not be arbitrary or capricious ( *Rosenkrantz, supra,* 29 Cal.4th at p. 677, 128 Cal.Rptr.2d 104, 59 P.3d 174), and that the Board's decisions be made "on *relevant*

grounds" and supported by the evidence (*Dannenberg, supra*, 34 Cal.4th at p. 1071, 23 Cal.Rptr.3d 417, 104 P.3d 783, italics added). *We read those directives as mandating that the Board, in its decisions, must articulate reasons that are grounded in evidence and rationally related to the statutory basis for denial.* The dissent's proposed standard, we think, goes beyond even the deferential "some evidence" standard and would annul any meaningful judicial review. Were we required to engage in the kind of prodigious efforts undertaken by our dissenting colleague to shore up the Board's decisions denying parole, affirmance would be guaranteed in every case.

*In re Roderick, supra*, 154 Cal.App.4th at 263 (emphasis added).

Finally, as has been recently stated, because *the overarching consideration is public safety*, the test in reviewing the Board's decision denying parole *"is not whether some evidence supports the reasons [the Board] cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety. [Citations.] Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety."* (*Lee, supra*, 143 Cal.App.4th at p. 1408, 49 Cal.Rptr.3d 931, fn. omitted.)

As discussed above, the "overarching" factor determining whether parole should be granted or denied is *whether the criminal poses "an unreasonable risk of danger to society."* (*Scott II, supra*, 133 Cal.App.4th at p. 591, 34 Cal.Rptr.3d 905; § 2281, subd. (a); *Lee, supra,* 143 Cal.App.4th at p. 1400, 49 Cal.Rptr.3d 931.) As also discussed above, every psychological evaluation in the record dating back at least to 1999 has concluded Barker would pose little or no danger to public safety if released on parole.

*In re Barker, supra*, 151 Cal.App.4th at 375 (emphasis added).

The Attorney General argues that so long as "some evidence," which may be as little as a "modicum," supports the Governor, we must affirm . . . *The test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether*

*some evidence indicates a parolee's release unreasonably endangers public safety.* ( Cal.Code Regs., tit. 15, § 2402, subd. (a) [parole denied if prisoner "will pose an unreasonable risk of danger to society if released from prison"]; see e.g. *In re Scott* (2005) 133 Cal.App.4th 573, 595, 34 Cal.Rptr.3d 905 ["The commitment offense can negate suitability [for parole] only if circumstances of the crime ... rationally indicate that the offender will present an unreasonable public safety risk if released from prison"]; but see *In re Lowe* (2005) 130 Cal.App.4th 1405, 31 Cal.Rptr.3d 1 [suggested "some evidence" applies to the factors, not dangerousness].) *Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety.* . we find no evidence that Lee is likely to commit another crime or that his release would unreasonably endanger the public.

*In re Lee, supra*, 143 Cal.App.4th at 1408 (emphasis added).

Thus, a governor, in reviewing a suitability determination, must remain focused not on circumstances that may be aggravating in the abstract but, rather, on *facts indicating that release currently poses "an unreasonable risk of danger to society"* (§ 2402, subd. (a); accord, Pen.Code, § 3041, subd. (b)).

*In re Elkins, supra*, 144 Cal.App.4th at 499 (emphasis added).

The Ninth Circuit, based on these and other authorities, fully supports this claim. In its recent decision in *Hayward v. Marshall*, 512 F.3d 536 (9th Cir. 2008), the Court explained the nexus requirement:

Even though these suitability and unsuitability factors are helpful in analyzing whether a prisoner should be granted parole, California courts have made clear that the "findings that are necessary to deem a prisoner unsuitable for parole," *Irons*, 2007 WL 2927359, at *3, are not that a particular factor or factors indicating unsuitability exist, but that a prisoner's release will unreasonably endanger public safety. *In re Dannenberg*, No. H030031, 2007 WL 3408290, at *9 (Cal.Ct.App. Nov. 16, 2007), *modified*, 2007 WL 4227229 (Cal.Ct.App. Dec. 3, 2007); *In re*

*Lee,* 143 Cal.App.4th 1400, 1408, 49 Cal.Rptr.3d 931
(Cal.Ct.App.2006); *In re Scott,* 133 Cal.App.4th 573, 595, 34
Cal.Rptr.3d 905 (Cal.Ct.App.2005); *see* Cal.Penal Code § 3041(b)
(providing that the Board "shall set a release date unless ...
consideration of the public safety requires a more lengthy period
of incarceration for this individual"). For our purposes, then,
"[t]he test is not whether some evidence supports the reasons the
Governor cites for denying parole, but whether some evidence
indicates a parolee's release unreasonably endangers public safety.
Some evidence of the existence of a particular factor does not
necessarily equate to some evidence the parolee's release
unreasonably endangers public safety." *Lee,* 143 Cal.App.4th at
1408, 49 Cal.Rptr.3d 931 (citations and footnote omitted); *see
also In re Elkins,* 144 Cal.App.4th 475, 499, 50 Cal.Rptr.3d
503(Cal.Ct.App.2006) (holding that the "governor, in reviewing a
suitability determination, must remain focused ... on facts
indicating that release currently poses 'an unreasonable risk of
danger to society' " (citing Cal.Code Regs. tit. 15, § 2402(a)));
*Scott,* 133 Cal.App.4th at 591, 34 Cal.Rptr.3d 905("The factor
statutorily required to be considered, and the overarching
consideration, is 'public safety.' " (citing Cal.Penal Code §
3041(b))).

. . . Hayward's commitment offense...cannot demonstrate that
Hayward's release will pose an imminent danger to public safety.
*See Rosenkrantz v. Marshall,* 444 F.Supp.2d 1063,
1084(C.D.Cal.2006) ("While relying upon petitioner's crime as an
indicator of his dangerousness may be reasonable for some period
of time, in this case, continued reliance on such unchanging
circumstances-after nearly two decades of incarceration and half a
dozen parole suitability hearings-violates due process because
petitioner's commitment offense has become such an unreliable
predictor of his present and future dangerousness that it does not
satisfy the 'some evidence' standard. After nearly twenty years of
rehabilitation, the ability to predict a prisoner's future
dangerousness based simply on the circumstances of his or her
crime is nil."); *Scott,* 133 Cal.App.4th at 595, 34 Cal.Rptr.3d
905("[T]he predictive value of the commitment offense may be
very questionable after a long period of time."). Hayward is now
sixty-four years old. The Governor was reviewing Hayward's

eleventh parole suitability hearing. Hayward had been in prison for nearly thirty years and had an exemplary record of conduct for most of that time . . . the unchanging factor of the gravity of Hayward's commitment offense had no predictive value regarding his suitability for parole. In the circumstances of this case, the Governor violated Hayward's due process rights by relying on that stale and static factor in reversing his parole grant.

*Hayward*, 512 F.3d at 543-546.

In sum the Board would preclude Mr. Clark's parole (*forever* – neither the facts stated by the panel as the basis for denying his parole, nor his undisputed parole suitability and low parole risk can ever improve) for the very *reason* that he is *suitable* for parole – he has served far in excess of the time required for his release on parole and would not pose an unreasonable risk of danger to public safety, should that occur.

### D.  Interminable Denial of Mr. Clark's Parole Based on Arguably Applicable but Immutable Factors of His Commitment Offense Violates Due Process By Amending His Prison Term to Life Without Any Possibility of Parole.

The only *arguably* viable ground for the 2005 panel's finding that Petitioner was unsuitable for parole was the gravity of the offense. Exhibit C, p. 81; see pp. 11-16, above. Although in some cases a parole-qualified prisoner like Mr. Clark may be denied parole initially if the commitment offense was particularly egregious compared to other examples of that offense, offense factors alone cannot continue to serve, as here, as the basis for *interminably* precluding parole. *Biggs,* 334 F.3d at 916-917.

The State's courts warn that "[T]he Board's authority to make an exception based on the gravity of a life term inmate's current or past offenses

should not operate so as to swallow the rule that parole is "normally" to be granted . . ." *Rosenkrantz*, 29 Cal.4th at 683, citing *Ramirez, supra*, 94 Cal.App.4th at 570.

The Ninth Circuit reviewed the constitutional propriety of a BPH panel's use of a first-degree murder commitment offense to find a prisoner unsuitable for parole at his *first* hearing. The Court found no evidence to support most of the panel's grounds for unsuitability, but held that a particularly egregious commitment offense could be an appropriate basis for finding such a prisoner unsuitable for parole at an *initial* parole hearing. The Ninth Circuit cautioned:

> As in the present instance, the parole board's sole supportable
> reliance on the gravity of the offense and conduct prior to
> imprisonment to justify denial of parole can be initially justified as
> fulfilling the requirements set forth by state law. Over time,
> however, should Biggs continue to demonstrate exemplary
> behavior and evidence of rehabilitation, denying him a parole date
> simply because of the nature of Biggs' offense and prior conduct
> would raise serious questions involving his liberty interest in
> parole...

> A continued reliance in the future on an unchanging factor, the
> circumstances of the offense and conduct prior to imprisonment,
> runs contrary to the rehabilitative goals espoused by the prison
> system and could result in a due process violation.

*Biggs, supra*, 334 F.3d at 916-917.

*Biggs*' holding has been ratified in addressing the issue here raised by Mr. Clark in decisions by the U.S. District Courts for the Central, Eastern, and Northern Districts of California, and more recently by several California Courts of Appeal. See *In re Gray, supra*, 151 Cal.App.4th 379; *In re Lawrence, supra*, 150 Cal.App.4th at pp. 1535-1540 (Rev. Grntd., July 2, 2007, No. S154018); *In re Elkins, supra*, 144 Cal.App.4th at pp. 498-499; *In re Lee, supra*, 143 Cal.App.4th at pp. 1412-1413; *In re Scott, supra*, 133 Cal.App.4th at

p. 595; see also *In re Barker, supra*, 151 Cal.App.4[th] at p. 372; *In re Dannenberg, supra*, 156 Cal.App.4[th] at 1387 (Rev. Grntd., February 13, 2008, No. S158880) ["The nature of Dannenberg's commitment offense was the sole basis for the Governor's decision that Dannenberg currently poses an unreasonable risk of danger to society if released. While Dannenberg's commitment offense was grave, the record [ ] lacks *any* evidence that now, more than two decades after his offense, the nature of Dannenberg's offense alone *continues* to support a conclusion that he poses an unreasonable risk of danger to society if released." (emphasis in original)].

*Irons v. Carey*, 479 F.3d 658 (9th Cir. 2007) is the Ninth Circuit's third in a trilogy that includes *Biggs*, and *Sass v. California Board of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006) ("*Sass*"). In *Biggs, Sass, and Irons*, the Ninth Circuit adjudicated one of Mr. Clark's pivotal claims: whether, consistent with due process, the unchanging facts of commitment offenses may be employed repeatedly or interminably to preclude the parole of one like Petitioner who indisputably satisfies all parole requirements who is forensically evaluated to pose a below average parole risk, and who has served in excess of the appropriate or maximum prison term prescribed by the regulations for an offense with those facts.

In *Irons* the Ninth Circuit held that the BPH panel's use of Irons' crime, a particularly egregious murder, at Irons' *fourth* parole hearing, and *before he had served the minimum prison term imposed by the trial court*, satisfied the "some evidence" test sufficiently to uphold the BPH panel's decision finding that Irons was unsuitable for parole.

The Ninth Circuit first focused on Irons' egregious murder; he fired 12 rounds into the victim, then, when he found the victim was still alive, stabbed him twice. After leaving the corpse in a sleeping bag for 10 days,

Irons removed and weighted it, and dropped it in the ocean. Irons received a sentence of 17 years-to-life.

The Ninth Circuit then emphasized that Irons, like Sass and Biggs before him, had not served his minimum term, i.e., "the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board." In discussing *Biggs*, *Sass*, and *Irons*, the Court carefully noted that while each decision must rest on its own facts, neither Biggs, Sass, nor Irons had served their aforementioned "minimum" terms when the Board denied parole.

In *Irons* the Court explained why *Biggs* is still good law and was <u>not</u> overturned by *Sass*, and re-emphasized that ***continued use of commitment offense facts to find such an inmate unsuitable for parole may constitute a due process violation <u>after the minimum term has been served</u>***:

> *We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence.* Specifically, *in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board.* [] All we held in those cases and all we hold today, therefore, is that, *given the particular circumstances of the offenses in these cases*, due process was not violated when these prisoners were deemed unsuitable for parole *prior to the expiration of their minimum terms.*

> Furthermore, we note that in *Sass* and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. *We hope that the Board will come to recognize that in some cases, indefinite*

CLARK v. HERNANDEZ; Petition for Writ of Habeas Corpus - Page 28

*detention based solely on an inmate's commitment offense,*
*regardless of the extent of his rehabilitation, will at some point*
*violate due process, given the liberty interest in parole that flows*
*from the relevant California statutes. Biggs,* 334 F.3d at 917.

*Irons v. Carey, supra,* at 664-665 (emphasis added).

The Ninth Circuit has reaffirmed the principal in *Hayward*:

In *Irons* was noted that "in all the cases in which we have held
that a parole board's decision to deem a prisoner unsuitable for
parole solely on the basis of his commitment offense comports
with due process, the decision was made before the inmate had
served the minimum number of years required by his sentence.
Specifically, in *Biggs, Sass,* and here, the petitioners had not
served the minimum number of years to which they had been
sentenced at the time of the challenged parole denial by the Board.

*Irons,* 505 F.3d 846, 2007 WL 2027359, at *6. Therefore, we
concluded that "[a]ll we held in those cases and all we hold today
... is that, given the particular circumstances of the offenses in
these cases, due process was not violated when these prisoners
were deemed unsuitable for parole prior to the expiration of their
minimum terms ." *Id.* Here, by contrast, Hayward has long served
more than his minimum fifteen-year term of imprisonment. We
hold that the Governor's reversal of parole in this case was not
supported by any evidence that Hayward's release would threaten
public safety, and that the Governor's reversal of his parole thus
violated his due process rights.

For the same reasons, we conclude that the Los Angeles County
Superior Court unreasonably applied the some evidence standard
to Hayward's petition. The Superior Court . . . noted that the
nature of the commitment offense supported the Governor's
finding that Hayward was unsuitable for parole. However, as we
have explained, in the circumstances of this case, reliance on
Hayward's commitment offense was not sufficient to provide
some evidence that his release would endanger the public.

*Hayward,* 512 F.3d at 547-548.

Including his 181 days of jail custody credit (exhibit A), Mr. Clark, at the time of his 2005 parole hearing at issue, had been confined for more than 20 years, five years longer than the *Irons* "minimum number of years" standard, *not including 60 months of post-conviction term credit* he had earned.

Because neither the facts of Mr. Clark's offense, the maximum parole suitability he has indisputably achieved, nor his forensically determined below average parole risk can improve, the continued preclusion of his parole based on his offense is necessarily *interminable*. The process has converted his prison term, life with the possibility of parole, which Pen.Code § 3041(a) defines as a ***probability*** (panel "shall normally set a parole release date"), to life without any possibility of parole – unless, as a district court recently posed, some future panel arbitrarily decides – before Mr. Clark's ultimate death in state prison – that all of the previous panels were wrong. *Irons v. Warden*, 358 F.Supp.2d 936, 947 (E.D. Cal. 2005). Neither the liberty interest provided by the State's parole laws and regulations nor the Due Process Clause permits the possibility of Mr. Clark's parole to rest entirely on such arbitrary speculation.

## II. Deferring Mr. Clark's Subsequent Parole Hearing for a Three-Year Period Violated Due Process Because it was Arbitrary in the Extreme and Supported by no Evidence of his Inability to be Parole Suitable After the Usual One-year Interval

The panel offset Petitioner's subsequent parole hearing by three years (two years longer than the usual one-year denial). The panel explained:

> . . . the panel notes that you have been convicted of murder second and that it is not reasonable to expect you will be granted parole during a hearing in the next three years. As a result sir we are going to deny you for three years.

Exhibit C, p. 84.

CLARK v. HERNANDEZ; Petition for Writ of Habeas Corpus - Page 30

*First*, the fact that Mr. Clark was convicted of "murder second" does not justify anything other than one-year denial because he qualifies for parole in all respects and has fulfilled all requirements therefor.

*Second*, the panel's subsequent re-recitation of the same facts it set forth to justify its finding of unsuitability was likewise an insufficient basis for a three-year deferral because that decision, as detailed above, flunked the some evidence test relevant to current parole risk..

*Third* and importantly, the grounds recited by the panel for the three-year setoff were *irrelevant* to the setoff determinant – whether Mr. Clark could be found suitable for parole after the standard one-year deferral.  The statute permitting multi-year setoffs is designed to be applied to cases in which a panel sets forth *evidence demonstrating that the prospective parolee cannot achieve parole suitability in the usual one-year interval*.  See Pen.C. § 3041 (b)(2); *In re Jackson*, 39 Cal.3d 464 (1985).

In a recent case decided by the Court of Appeal for the Third District (January 2007), the court reasoned:

> That brings us to the Board's decision to defer considering petitioner for parole for another three years (three-year denial). Generally, if the Board finds an inmate unsuitable for parole it must conduct subsequent parole consideration hearings annually. (Pen.Code, § 3041.5, subd. (b)(2), 2d par.) One exception relevant here is that if an inmate has been convicted of murder, the hearing may be deferred for "[u]p to five years" if the Board "finds that it is not reasonable to expect that parole would be granted at a hearing during th[ose] ... years." (Pen.Code, § 3041.5, subd. (b)(2)(B).) The Board's decision to defer the annual hearing is guided by the same criteria used to determine parole suitability. (§ 2270, subd. (d), citing § 2402.)
>
> In its three-year denial decision, the Board used the same factors it had used in its suitability determination, adding that the incident "didn't need to happen; shouldn't [have] happened. [The Lopezes]

... [had been] your friends, people that you knew, all because of a moment's anger, a moment's distrust, a momentary loss of control. The prisoner has not completed necessary programming [i.e., therapy], which is essential for his adjustment, and needs additional time to gain such programming.... Therefore, a longer period of observation or evaluation of the prisoner is called for...."

As noted, the regulations state that a decision deferring parole consideration is to be guided by the same criteria used to determine parole suitability. (§ 2270, subd. (d), citing § 2402.) Case law has stated that this decision "may involve some of the same facts on which the unsuitability determination is based. What is required ... is an identification of reasons which justify the postponement," and a recognition that the Board is making a separate decision. (*In re Jackson* (1985) 39 Cal.3d 464, 479; see also *People v. Belmontes* (1983) 34 Cal.3d 335, 347-348.)

Here, as to its three-year denial decision, the Board relied on its (supported) unsuitability findings, additionally explained the former relationship between the parties and its relevance to the Board's concern that petitioner obtain further therapy, and additionally noted the necessity of time to obtain that therapy. But we have found nothing in the record to support a conclusion that three years would be needed for petitioner to satisfy this concern, or that a shorter period such as one year would not be enough to do so. Consequently, we conclude that the Board's three-year denial does not meet the "some evidence" standard. We will grant the petition in this respect and order the Board to immediately conduct (after meeting any procedural requirements) a parole suitability hearing regarding petitioner.

*In re Lozano* (CA3) 2007 WL 117709 at *6.

Because the panel articulated no possible nexus between the disputed offense facts and Mr. Clark's current parole risk and, more importantly, ***suggested no evidence demonstrating that Mr. Clark could not achieve parole suitability in the usual one-year interval,*** its deferral of the subsequent

hearing for an additional year on that basis flunks the some evidence test and denied due process.[4]

## CONCLUSION

Because the 2005 BPH panel cited no evidence to support its conclusion that Joseph Clark's parole still posed "an unreasonable risk of danger" to public safety, nor any evidence suggesting that the facts of his 20 year old (now 22 year old) second-degree murder offense render him a current unreasonable risk, the decision flunks the some evidence and denied due process. The interminable preclusion of Mr. Clark's parole on this basis, converting his prison term to life without the possibility of parole, has extinguished his protected liberty interest in his parole date.

The risk to public safety posed by Mr. Clark's parole, as assessed in his forensic psychological evaluations, is below average. No contrary evidence exists. That assessment is not negated by the *22 year old* commitment offense facts because they no longer bear any nexus to his current parole risk.

Petitioner respectfully seeks an order vacating the BPH panel's decision at his August 10, 2005, hearing and directing BPH to conduct a new hearing for the sole purpose of determining his prison term and a parole date, to release Mr. Clark on said date or immediately if it has lapsed, and to reduce his parole term by the amount of time by which his imprisonment has exceeded said term and by any applicable statutory and regulatory term credits to which he is entitled. See *Hayward, supra*, 512 F.3d 536 [order of January 3, 2008,

---

[4] If the panel meant to imply that the additional setoff was necessary because it felt that Mr. Clark should serve more time, it was wrong. The statute requires that parole shall be granted as soon as the subject no longer poses an unreasonable risk of danger to public safety, commencing with the initial parole hearing. (Pen.C. § 3041(a), 15 CCR §§ 2401, 2402(a).)

"releasing Petitioner forthwith"]; *Rosenkrantz v. Marshall, supra*, 444
F.Supp.2d at p. 1087; *Martin v. Marshall, supra*, 448 F.Supp.2d 1143; *Sanchez
v. Kane, supra*, 444 F.Supp.2d at p. 1063; *In re Montgomery*, 156 Cal.App.4[th]
930, 947(Rev. Grntd., February 28, 2008, No. S159141); *In re Gray*, 151
Cal.App.4[th] 379, 411; *In re Lee, supra*, 143 Cal.App.4[th] at p. 941; *In re Elkins,
supra*, 144 Cal.App. 4th at p. 503 [vacating decisions denying parole in murder
cases and ordering parole release].

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

//

Dated:  2-28-08

Respectfully submitted,

*Linda Buchalter*
Linda Buchalter
Counsel for Petitioner
JOSEPH CLARK

## **VERIFICATION**

I declare, under penalty of perjury, that the facts set forth above are true.

Dated:  2-28-08          , at Santa Monica, California.

*Linda Buchalter*
Declarant

CLARK v. HERNANDEZ; Petition for Writ of Habeas Corpus - Page 35