UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH CLARK,<br><br>                           Petitioner,<br><br>   v.<br><br>ROBERT HERNANDEZ, Warden,<br><br>                           Respondent. | Civil No.   08cv0399 H (PCL)<br><br>**REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS** |

## I.

## INTRODUCTION

Petitioner Joseph Clark ("Petitioner"), a state prisoner, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging the Board of Parole Hearings' (the "Board") denial of parole on August 10, 2005. Petitioner presents two issues: (1) violation of his federal right to procedural due process by denial of parole based on the facts of his commitment offense; and (2) violation of his federal right to procedural due process by deferring a subsequent parole hearing for three years. This case is before the undersigned Magistrate Judge pursuant to S.D. Cal. Civ. R. 72.1(c)(1)(c) for Proposed Findings of Fact and Recommendation for Disposition.  For the reasons set forth below, the Court respectfully recommends that the petition be DENIED.

//

//

//

//

## II.

## BACKGROUND

**A.     Statement of Facts**

Under 28 U.S.C. § 2254(e)(1) (2008), the state court's factual determinations are presumed to be correct unless Petitioner rebuts the presumption by clear and convincing evidence. Petitioner has not alleged that the factual determinations made by the state court in this case are incorrect. Therefore, the following facts of Petitioner's conviction are taken verbatim from the California Superior Court's 2006 opinion upon Petitioner's Writ of Habeas Corpus:

> The record reflects that on September 8, 1985, petitioner went to a bar where he had a confrontation with the victim about a comment that the victim made to a female bartender. The victim left the bar after the confrontation for another bar. At the end of the night, petitioner told his companions that he was going to kill the victim. When the victim arrived at petitioner's house, petitioner jumped on him and stabbed him multiple times. Petitioner used such force that his knife broke while stabbing the victim. Petitioner went into his house to retrieve another knife to continue stabbing the victim, slashing the victim's throat such that his head was almost severed from his body.

In re Joseph Clark, Superior Court of California, County of Los Angeles, BH 003805 (December 27, 2006), filed in the present action as Lodgment 3.

Petitioner was received into custody on January 22, 1986 for a conviction of second degree murder and is currently serving a sentence of 15 years to life with a minimum eligible parole date of December 27, 1995. (Id.) On January 3, 1997, Petitioner attended the first parole hearing where he was denied parole for four years. (Doc. No. 1 Ex. C at 45.) On November 28, 2001, Petitioner stipulated to a further three-years in order to "attend AA" and "work on parole plans." (Id. at 45-46.) Petitioner then underwent a Psychosocial Assessment examination on August 16, 2000 with T. R. Robertson, M.D., the staff psychiatrist at Donovan Correction Facility, for purposes of determining his readiness for parole. Dr. Robertson's findings indicated that Petitioner "had a significant history of alcoholism prior to the life crime." Doc. No. 1 Ex. D at 5. More importantly, Dr. Robertson noted Petitioner and the victim had both been drinking excessively at the time of the crime "and this contributed significantly to the ultimate crime." Id. Lastly, the report noted Petitioner's acknowledgment "that alcohol consumption had contributed significantly to most of the problems in his life," but he did not feel participation in any rehabilitation program for alcohol dependency was

"worth the trouble."  Id.

On February 24, 2005, Petitioner was scheduled for a second parole hearing, however, this hearing was postponed because Petitioner's attorney was not able to attend.  (Id. at 46.)  On August 10, 2005, a Subsequent Parole Consideration Hearing was held at R. J. Donovan Correctional Facility to determine whether Petitioner should be paroled from prison.  (Doc. No. 1 Ex. C.)  At the conclusion of the hearing, the Board denied Petitioner parole.  (Id.)

**B.     State Court Proceedings**

On January 4, 2006, Petitioner filed a Petition for Writ of Habeas Corpus with the Los Angeles County Superior Court.  (Lodgment 1.)  The petition alleged that the Board abrogated Petitioner's rights to due process by basing their decision for denial of parole solely on his offense and pre-conviction conduct, rather than on "a preponderance of the evidence" that Petitioner currently poses a risk to public safety.  (Id. at 7-10.)  By Order dated December 27, 2006, the Superior Court denied the petition.  (Lodgment 3.)  In denying the Petition, the Superior Court found that

> The record further reflects that the Board also relied on several additional factors in denying petitioner parole at this time, and there is some evidence to support that decision.  The Court finds that there is some evidence to support its finding of unsuitability because petitioner has not sufficiently participated in beneficial self-help that would indicate an enhanced ability to function within the law upon release.  The Board found that the petitioner's psychological evaluation was not supportive of release.

(Lodgment 3 at 1 (citations omitted).)

On January 30, 2007, Petitioner filed a petition for writ of habeas corpus with the California Court of Appeal, Second Appellate District, Division Four.  (Lodgment 4.)  That petition further advanced the claim that the Board's decision to defer Petitioner's next parole hearing for three years was arbitrary and violated due process.  The Court of Appeal denied the Petition.  (Lodgment 3 at 1 (citing In re Dannenberg 34 Cal.4th 1068, 1071, 1094-1095 (2005) and In re Rosenkrantz, 29 Cal.4th 616, 685-686 (2002).)

On August 13, 2007, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court.  (Lodgment 6.)  That petition was based on claims identical to those raised before the Court of Appeal.  The Supreme Court denied the petition on October 24, 2007 without a written opinion.  (Lodgment 7.)

**C.     Federal Court Proceedings**

Petitioner filed the instant petition for a federal writ of habeas corpus on March 3, 2008. The petition claims that Petitioner suffered a violation of his federal right to procedural due process (1) when the Board of Parole Hearings relied on Petitioner's commitment offense and his failure to participate in a substance abuse program to deny him parole, (2) when the Board of Parole Hearings deferred Petitioner's subsequent parole hearing for a three year period rather than "the usual one-year interval." (Doc. No. 1).

A Response to the Petition was filed on August 6, 2008. Respondent asserts established precedent by the United States Supreme Court holds that due process is satisfied when the state provides an inmate an opportunity to be heard and a statement of the reasons for the parole decision. (Doc. No. 10 P. & A. at 2 (citing <u>Greenholtz v. Inmates of Nebraska Penal and Correction Complex</u>, 442 U.S. 1, 16 (1979)). Respondent further asserts that the state court applied the "some evidence" standard set forth by the Ninth Circuit and found ample evidence in the record supported the Board's decision. (Doc. No. 10 P. & A. at 4).

Petitioner did not file a traverse following the Response to the Petition in this case.

## III.
## STANDARD OF REVIEW

**A.     AEDPA**

Title 28 U.S.C. section 2254(a), allows for review by a district court of "the judgment of a State court only on the ground that [the habeas petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (2008). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus petitions filed after 1996. <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997). The current petition was filed in 2006 and, as such, is governed by the AEDPA. As amended by the AEDPA, 28 U.S.C. section 2254(d) reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable

> application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2008).

Where, as here, there is no reasoned decision from the state's highest court to review, a federal court "looks through" the silent state supreme court decision to the "last reasoned opinion" issued in the state's courts. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.) In Petitioner's case, the California Supreme Court denied Petitioner's state petition for writ of habeas corpus without comment. (Lodgment 7.) Therefore, in reviewing Petitioner's claims, this Court looks to the reasoned opinion by the Superior Court of California, County of Los Angeles, dated December 27, 2006-- filed with this Court as Lodgment 3-- which denied Petitioner's state habeas petition. See Ylst, 501 U.S. at 801-06. The Court reviews that decision to determine whether it was contrary to, or involved, an unreasonable application of clearly established federal law or whether it was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

**B.    Procedural Due Process**

Criminal defendants have a constitutionally protected due process right to trial, however, "[t]he Fifth Amendment does not require a trial-type hearing in every conceivable case of government impairment of private interest." Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 894 (1961). In examining questions of procedural due process in adjudicative administrative proceedings, the Supreme Court has developed a two-part inquiry: (1) consideration of the government function involved and the private interest that has been affected; and (2) assessment of the process necessary to protect that interest. See id. at 895.

The Supreme Court applied this procedural due process analysis to the context of parole revocation in Morrissey v. Brewer, 408 U.S. 471 (1972). The Court determined that "the liberty of a parolee . . . is valuable and must be seen as within the protection of the Fourteenth Amendment." Id.

at 482. The Court prescribed "the minimum requirements of due process" for parole revocation hearings.[1] Id. at 488-89.

Subsequently, in Greenholtz v. Inmates of Neb. Penal and Correctional Complex, the Supreme Court distinguished the due process rights of prisoners in relation to parole release from the rights of prisoners facing parole revocation. 442 U.S. 1, 9-11 (1979).

> That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained. To that extent the general interest asserted here is no more substantial than the inmate's hope that he will not be transferred to another prison, a hope which is not protected by due process.

Id. at 11 (emphasis in original, citations ommitted). The Court held "[t]he parole determination therefore must include consideration of what the entire record shows up to the time of the sentence, including the gravity of the offense in the particular case." Id. at 15. The Greenholtz decision further held that there was no due process requirement that a parole board "specify the particular 'evidence' in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional release." Id  The Nebraska parole procedure challenged was upheld because the parole procedure afforded inmates an opportunity to be heard and "when parole is denied it inform[ed] the inmate in what respects he falls short of qualifying for parole." Id. at 16.

The Supreme Court established an evidentiary standard for the revocation of prisoners' good time credits in Superintendent, Massachusetts Correctional Institution at Walpole v. Hill, 472 U.S. 445 (1985). In Superintendent v. Hill, the Court held that the "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." 472 U.S. at 455. "Some evidence" remains the evidentiary standard for a prison disciplinary

---

[1] "They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." Morrissey, 408 U.S. at 489.

hearing that would cause revocation of a prisoner's good time credits.[2]

The Ninth Circuit adopted the "some evidence" standard for prison board determinations which deny prisoners parole release dates in <u>Janscek v. Oregon Board of Parole</u>, 833 F.2d 1389 (9th Cir. 1987). The Court of Appeals applied the holding of <u>Superintendent v. Hill</u> while acknowledging the factual differences between that case and the one being considered:

> The quantum of evidence necessary to satisfy due process in a prison board determination was addressed by the Supreme Court in <u>Superintendent v. Hill</u>, 472 U.S. 445, 86 L. Ed. 2d 356, 105 S. Ct. 2768 (1985). Though the liberty interest at stake there surrounded the accumulation of good-time credits, rather than the parole decision which is at issue here, both directly affect the duration of the prison term; thus, the <u>Hill</u> holding is applicable in this case. The Court there concluded that the requirements of due process are satisfied if some evidence supports the decision.

<u>Janscek</u>, 833 F.2d at 1390.

More recently, in <u>Sass v. Cal. Board of Prison Terms</u>, the Ninth Circuit confirmed in the context of a habeas decision that the "some evidence" standard is clearly established federal law in the parole context as determined by the Supreme Court of the United States. 461 F.3d 1128-9 (9th Cir. 2006). Applying the AEDPA standard, the Ninth Circuit held that where evidence presented to the Board constituted "some evidence" to support the Board's decision, a state court decision upholding the denial of parole on that basis was not contrary to, nor an unreasonable application of, clearly established federal law. <u>Id.</u> at 1129.

## IV.

## DISCUSSION

**A.   Liberty Interest**

Petitioner argues he has a liberty interest in parole which entitles him to adequate due process which he has not been afforded. (Doc. No. 1 Pet. at 25-30.) The first step in analyzing a procedural due process claim of this type is to consider "whether there exists a liberty or property

---

[2] <u>See</u> <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir. 2006); <u>see e.g.</u>, <u>Reynolds v. Williamson</u>, 197 Fed. Appx. 196, 199 (3d Cir. 2006); <u>Garcia v. Martinez</u>, 197 Fed. Appx. 490, 492 (7th Cir. 2006); <u>Preble v. Estep</u>, 190 Fed. Appx. 697, 699-700 (10th Cir. 2006); <u>Louis et al. v. Department of Correctional Services of Nebraska</u>, 437 F.3d 697, 701 (8th Cir. 2006); <u>Stiger v. Grayer</u>, 159 Fed. Appx. 914, 915 (11th Cir. 2005); <u>Sira v. Morton</u>, 380 F.3d 57, 69 (2d Cir. 2004); <u>McClung v. Shearin</u>, 90 Fed. Appx. 444, 446 (4th Cir. 2004); <u>Richards v. Dretke</u>, 394 F.3d 291, 293 (5th Cir. 2004); <u>Sarmiento v. Hamingway</u>, 93 Fed. Appx. 65, 66 (6th Cir. 2004).

1 interest which has been interfered with by the state." Sass v. California Board of Prison Terms, 461
2 F.3d 1123, 1128 (9th Cir. 2006) (quoting Kentucky Dept. of Corrections v. Thompson, 490 U.S.
3 454, 460 (1989)). The Ninth Circuit has held that the California Supreme Court did not "explicitly
4 or implicitly hold that there is no constitutionally protected liberty interest in parole" when it
5 examined the issue and decided In re Dannenberg, 34 Cal. 4th 1061 (2005). Sass, 461 F.3d at 1128.[3]

7 Since the California Supreme Court has not provided a conclusive opinion as to whether
8 California's prisoners have a liberty interest in parole, the Ninth Circuit's own decisions are
9 controlling and those decisions do hold that a constitutionally protected liberty interest in parole
10 exists upon the incarceration of a prisoner with an indeterminate sentence in California. See Sass,
11 461 F.3d at 1128; Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003); McQuillon v. Duncan,
12 306 F.3d 895, 902-03 (9th Cir. 2002).

13 Therefore, concluding that Petitioner alleges deprivation of a constitutionally-protected
14 liberty interest, the Court proceeds to analyze "whether the procedures attendant upon the
15 deprivation were constitutionally sufficient." Sass, 461 F.3d at 1128 (quoting Kentucky Dept. of
16 Corrections v. Thompson, 490 U.S. at 460).

18 **B.    Adequate Procedural Protections**

19 In California, "an inmate shall be found unsuitable for parole and denied parole if, in the
20 judgment of the Board, the prisoner will pose an unreasonable risk of danger to society if released
21 from prison." Irons v. Carey, 479 F.3d 658, 662 (9th Cir. 2007) (quoting Dannenberg 34 Cal. 4th at
22 1080). In assessing whether the Superior Court of California properly decided that the Board's
23 determination of Petitioner's parole eligibility was constitutionally sufficient, this Court looks to
24 whether the Board's suitability determination was supported by "some evidence." Irons v. Carey,

---

[3] Accord Rosenkrantz v. Marshall, 444 F. Supp. 2d 1063, 1078-9 (C.D.Cal. 2006); Martin v. Marshall, 431 F. Supp. 2d 1038, 1044 (N.D.Cal. 2006) (finding a liberty interest in parole and citing unpublished United States district court opinions from the Eastern and Central Districts of California in accord); Sanchez v. Kane, 444 F. Supp. 2d 1049, 1059 (C.D. Cal. 2006), reversed in part on other grounds; Quinteros v. Hernandez, 419 F. Supp. 2d 1209, 1216 (C.D. Cal. 2006); Cass v. Woodford, 432 F. Supp. 2d 1061, 1072 (S.D. Cal. 2005) (Sabraw, J.; Porter, M.J.).

479 F.3d 658, 662 (9th Cir. 2007) (citing <u>Biggs</u>, 334 F.3d at 915). This analysis is necessary to determine whether the Superior Court's finding that the Board's determination was supported by some evidence constituted an unreasonable application of the some evidence principle. Therefore, the Court must determine whether the Board relied on some evidence to find that Petitioner poses an unreasonable risk of danger to society if paroled.

Petitioner argues due process and the state's parole scheme as set forth in the California Penal Code and the California Code of Regulations requires the articulation of a nexus between facts of the commitment offense and Petitioner's current parole risk. Cal. Pen. Code § 3041; 15 Cal. Code of Regulations §§ 2041, 2402(a) (2008). Whereas the California Superior Court applied state law in its decision of Petitioner's claims for habeas relief, this Court looks only at whether the California Superior Court's decision unreasonably applied clearly established Federal law or unreasonably determined facts. 28 U.S.C. § 2254(d) (2008). As discussed above, a parole determination must include consideration of what the entire record shows up to the time of the sentence, including the gravity of the offense in the particular case, and the reasons upon which denial of parole was based. <u>Greenholtz</u>, 442 U.S. at 15. Further, due process does not require that a parole board "specify the particular 'evidence' in the inmate's file or at his interview on which it rests the discretionary determination. <u>Id.</u> Therefore, because the parole procedure afforded Petitioner an opportunity to be heard and reasons for why Petitioner "falls short of qualifying for parole," it does not appear Petitioner's due process rights were violated. <u>Id.</u> at 16.

Petitioner cites <u>Biggs v. Terhune</u>, 334 F.3d 910 (9th Cir. 2003) for the proposition that continued reliance on an unchanging factor such as the commitment offense for the denial of parole is unjustified. (Doc. No. 1 Pet. at 26.) In <u>Biggs</u>, a prisoner filed a petition for writ of habeas corpus alleging that his Fifth Amendment right to due process was violated because the Board denied parole based solely on the commitment offense, despite an exemplary post-incarceration record. <u>Id.</u> at 915. The Ninth Circuit concluded that the parole board properly denied parole based on the appellant's commitment offense. <u>Id.</u> at 916. The court noted in dicta:

> [T]he parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can initially be justified as fulfilling the requirements set forth by the state law. Over time, however, should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him

> a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole. . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.

Id. at 916-917.

The Ninth Circuit has since clarified that this language from Biggs does not constitute the holding of that decision. In Sass v. California Board of Prison Terms, the Ninth Circuit disagreed with a magistrate judge's recommendation that a habeas petition be granted on the grounds that "the Board's continued reliance on immutable factors to deny parole could result in a due process violation." 461 F.3d at 1126. In affirming the district court's rejection of that recommendation, the Ninth Circuit noted that "Biggs affirmed a denial of parole after holding that the circumstances of the offense and conduct prior to imprisonment constituted some evidence to support the Parole Board's decision." Id. The Ninth Circuit found no violation of due process where "the Board based its finding that Sass was unsuitable for parole on the gravity of his convicted offenses in combination with his prior offenses. These elements amount to some evidence to support the Board's determination." Id. at 1129.

More recently, the Ninth Circuit has again held that the Board's reliance on pre-conviction behavior does not necessarily violate procedural due process. In Irons v. Carey, "the Board based its 2001 determination that Irons was unsuitable for parole first and foremost on the fact that the offense was carried out in an especially cruel and callous manner which demonstrates a callous disregard for human life." 479 F.3d at 663 (quotation omitted).

Considering both Dannenberg and Sass, the Court of Appeals decided that:

> Because we find that Irons' crime was similarly cruel or vicious, we cannot say that there was not "some evidence" to support the Board's determination that Irons was unsuitable for parole under California law. Specifically, given that his commitment offense, standing alone, is a sufficient basis for deeming a petitioner unsuitable where, as here, there is some evidence to support a finding that "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering" and the "motive for the crime is inexplicable or very trivial in relation to the offense," Cal. Code Regs., tit. 15 § 2402(c)(1)(D)-(E), we cannot say that the state court unreasonably applied Hill's "some evidence" principle.

Id. at 664.

In the instant case, the Board's oral decision to deny parole relied in part on the same justifications as were present in Irons, namely that Petitioner's commitment offense was carried out in "an especially cruel, callous and heinous manner" and "in a dispassionate and calculating manner." (Doc. No. 1 Ex. C at 81.) Although Petitioner shows remorse and admits full culpability for the offense, it is the discretion of the Board to determine if Petitioner poses a risk to public safety based on all available information in the record at the time of the parole hearing. Further, courts generally give great deference to the broad discretion of the Board in parole matters so long as some evidence to support the Board's decision is present in the record. Here, the main reason for denial of parole was the fact that Petitioner's commitment offense was carried out in a dispassionate and calculated manner. This reason constitutes the evidence required to support a denial of his parole under applicable law.

The Board also considered Petitioner's failure to participate in beneficial self-help programs to address his alcohol dependence. (Doc. No. 1 Ex. C at 83.) The California Superior Court indicated in its opinion that participation in such programs would "indicate an enhanced ability to function within the law upon release." (Lodgment 3 at 1.) The Board determined that the Board of Prison Terms, during the two prior parole proceedings in 1997 and 2001, had recommended that Petitioner participate in any program in order to rehabilitate Petitioner such that he be able to refrain from abusing alcohol. (Doc. No. 1 Ex. C at 83.) This is important in light of the fact that the commitment offense occurred while Petitioner was intoxicated. The psychiatric evaluation report compounds this concern by determining that it "is probable that alcohol consumption on his and the victim's part was a very significant contributing factor [to the offense]." (Doc. No. 1 Ex. D at 5.) Despite recommendations that he do so, Petitioner has not participated in any type of self-help program to address his tendency to abuse alcohol because it is not "worth the trouble." Id. Moreover, the psychological report indicates that although the probability that Petitioner would commit a similar crime is low, "in light of his history of alcoholism and apparent failure to profit from experience," the risk is not zero. Id. Therefore, because these reasons provided by the Board further provide the evidence necessary to support the Board's denial of Petitioner's parole, Petitioner's due process rights were not violated.

**C.    Deferral of Subsequent Parole Hearing**

Petitioner's second claim, that the Board violated his federal right to procedural due process by arbitrarily deferring his subsequent parole hearing for a three-year period, does not merit habeas relief because clearly established federal law, as determined by the Supreme Court of the United States, does not set forth any specific time requirement within which the Board of Parole Hearings must revisit the issue. Petitioner cites to the California Penal Code for the proposition that a one-year deferral is the standard amount of time in cases such as this one.  However, Petitioner has not put forth any *federal* authority for this contention and, as such, because the three-year deferment appears consistent with Petitioner's previous parole proceedings, the Court finds that the Board's decision cannot be considered "arbitrary" and unsupported by the evidence.  The Board may well have thought a three-year period of time was adequate to give Mr. Clark the opportunity to participate in the self-help programs recommended and further rehabilitate his alcohol dependency.  Therefore, the California Superior Court's finding that some evidence supported the Board's decision to deny parole and defer a subsequent hearing for three years was a reasonable and correct application of federal law.

**V.**

**CONCLUSION**

The Court submits this Report and Recommendation to United States Chief District Judge Marilyn L. Huff under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:  (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **December 12, 2008** any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

/ /

/ /

/ /

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **December 26, 2008**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: November 21, 2008

Peter C. Lewis
U.S. Magistrate Judge
United States District Court